## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

| | |
|---|---|
| **TYLER JOHNSON**<br>5005 Hazel Avenue<br>Halethorpe, Maryland 21227<br>*Resident of Baltimore County*<br><br>And<br><br>**JAMES PHELAN**<br>419 Valley Meadow Circle, Apt. T3<br>Reisterstown, Maryland 21136<br>*Resident of Baltimore County*<br><br>       Plaintiffs,<br><br>***Individually and on Behalf of All***<br>***Similarly Situated Employees***<br><br>v.<br><br>**HELION TECHNOLOGIES, INC.**<br>1965 Greenspring Drive<br>Timonium, Maryland 21030<br><br>Serve:  Paul F. Evelius, R.A.<br>       7 Saint Paul Street, 18th Floor<br>       Baltimore, Maryland 21202<br><br>       Defendant. | <u>Jury Trial Requested</u><br><br><br>Collective/Class Action Claim<br><br><br><br>Civil Action No.: |

## COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED

Tyler Johnson and James Phelan, Plaintiffs, by and through their undersigned counsel and

the Law Offices of Peter T. Nicholl, on behalf of themselves and all others similarly situated,

hereby submit their Complaint against Helion Technologies, Inc., Defendant, to recover unpaid

wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of

the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter,

"FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant Helion Technologies, Inc. (hereinafter, "Defendant") is an Information Technology ("IT") company that specializes in servicing automotive dealerships across the United States. General computer installation and maintenance are among the services it provides. Defendant employs Technicians to assist with servicing its customers. These Technicians hold various titles. Regardless of their title, the work performed by most of Defendant's Technicians does not require any advanced academic knowledge. To perform their duties, specialized training is not needed. All that is needed is the basic training Defendant provides.

Plaintiffs worked as Technicians for Defendant. Defendant classified Plaintiffs and other similarly situated Technicians as exempt employees. Plaintiffs and other similarly situated Technicians regularly worked over forty (40) hours each week. Defendant paid Plaintiffs and this group of Technicians a salary for the work they performed. However, Plaintiffs and other Technicians with similar positions did not perform duties that would exempt them from the overtime requirements.

Due to this fact, in approximately February of 2016, Defendant began to reclassify many of its Technicians. They were converted from salaried to hourly employees. Most of these Technicians were assigned to Defendant's Desktop Department. Some were also assigned to Defendant's Outsource Field Department. Technicians from these groups finally began to receive

proper overtime payments. This includes ("time-and-a-half") payments for working over forty (40) hours a week. However, Plaintiffs and other Technicians within this group failed to receive back wages. They were never compensated for the overtime they worked during the period they were paid a salary.

Defendant also refused to reclassify all of its Technicians. Technicians who hold certain titles or work in particular departments continue to be paid a salary. These technicians are still not properly compensated for the excessive overtime hours they work. They are still cheated out of their wages daily.

## THE PARTIES

1.      Defendant Helion Technologies, Inc. ("Defendant") is a for-profit corporation.[1]

2.      Defendant's principal office is located at 1965 Greenspring Drive, Timonium, Maryland, 21093.

3.      Defendant is an information technology ("IT") service provider.

4.      Defendant provides network and computer installation support services to automotive and trucking dealerships across the United States and Canada.

5.      Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL.  Defendant's business meets the definition of a retail or service establishment.

6.      Defendant is also subject to the FLSA, MWHL and the MWPCL, as its annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

7.      Defendant employs Technicians throughout various regions of the United States and Canada.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency.  To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

8.      Plaintiffs worked as Technicians for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, Md. Code Ann., Lab. & Empl. § 3-401(b) and the MWPCL, Md. Code Ann., Lab. & Empl. § 3-501(b).

9.      Defendant is engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(d).

10.     Based on the nature of the duties they performed as part of their employment with Defendant, at all times relevant to this Complaint, Plaintiffs engaged in interstate commerce.

11.     Plaintiff Tyler Johnson ("Johnson") is an adult resident of Baltimore County, Maryland.

12.     Johnson was employed with Defendant from May 16, 2013 to approximately August 2018. He was hired to provide technical support to Defendant's clients. Johnson held various positions throughout his tenure. He began as a Desktop Support Technician, also known as a Desktop Support Engineer, in Defendant's Desktop Services Department.

13.     In approximately November 2015, Johnson was transferred to the Outsource Field Department, where he worked as an Outsource Field Technician, also known as an Outsource Field Specialist. He held this position for the remainder of the relevant period.

14.     Plaintiff James Phelan ("Phelan") is an adult resident of Baltimore County, Maryland.

15.     From November 28, 2011 to August 30, 2018, Phelan was employed with Defendant. He too was hired to provide technical support. He held various positions throughout his tenure. The position that he held relevant to this matter was in the Desktop Services

Department, with the title of Systems Support Technician, also known as Systems Support Engineer.

16.     Both Plaintiffs primarily worked out of Defendant's office in Timonium, Maryland.

17.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and other similarly situated Technicians.

18.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and others similarly situated.

19.     Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and other Technicians.

20.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

21.     Defendant had and exercised the power and authority to change the course of Plaintiffs' and other Technicians' duties.

22.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

23.     Plaintiffs and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

24.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

25.     Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

26.     Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

27.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

28.     This Honorable Court has personal jurisdiction over Defendant; Defendant is incorporated under the laws of Maryland and conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

29.     Defendant is an information technology ("IT") company that caters to automotive dealerships across the country.  Defendant specializes in computer installation and network support services.

30.     Defendant employs Technicians to provide support services to its clients. These services consist of installing hardware and software and performing general maintenance and troubleshooting tasks.

31.     Plaintiff Johnson was responsible for these tasks. He began working for Defendant on May 16, 2013. He started as a Desktop Support Technician, also known as a Desktop Support Engineer (collectively referred to as "Desktop Support Technician"). He was originally assigned

to Defendant's Desktop Services Department. He was specifically categorized as a Desktop Support Technician I. In approximately November 2014, he was promoted to the position of Desktop Support Technician II. He held this position until approximately November 2015.

32.     As a Desktop Support Technician, Plaintiff Johnson's duties mirrored those of all of Defendant's Desktop Support Technicians, regardless of their respective level (I, II, or III).

33.     Plaintiff Johnson and other Desktop Support Technicians' duties centered on resolving the technical issues of Defendant's clients. They were Defendant's first line of defense when it came to handling its clients' service needs.

34.     Plaintiffs and other Desktop Support Technicians received their assignments through digital "tickets." Tickets were generated from service calls made by Defendant's client. Each ticket would be added to an automated queue and assigned to a specific Desktop Support Technician.

35.     Plaintiffs and other Desktop Support Technicians were required to respond to each ticket within a specific timeframe. Failure to do so could result in disciplinary actions.  This required Plaintiff and other Desktop Support Technicians to remain after hours to ensure that all tickets were completed within the time allotted.

36.     Most tickets could be handled remotely at Defendant's Timonium office, or at any location with internet access.  When tickets could not be handled remotely, Plaintiff Johnson and other Desktop Support Technicians were required to travel to where the client was located.

37.     When Plaintiffs and other Desktop Support Technicians were required to travel, they would have to perform basic field work. This primarily consisted of routine service tasks. It required Plaintiffs and others similarly situated to perform manual labor. They consistently had to unplug, replace and reroute ethernet cables. They also had to consistently move servers and

computers around in order to gain access to the particular apparatus needed to perform their service work.

38.     These employment guidelines were attributable to all of Defendant's Desktop Support Technicians. This was regardless of their particular title.

39.     Being promoted to a Desktop Support Technician II, also known as a Desktop Support Engineer II, did not change Plaintiffs and other similarly situated employees' duties. Those promoted to the position of Desktop Support Technician II were not granted any authority over the terms and conditions of a Desktop Support Technician I's employment. The duties performed by both level I and II Technicians were identical. Their role still consisted of processing tickets out of a queue. The same goes for Technicians who were subsequently promoted to level III. The only difference was the individual's seniority or experience.

40.     Plaintiff Johnson and all Defendant's Desktop Support Technicians were paid a salary for the work they performed.[2]

41.     In approximately November 2015, Plaintiff Johnson was transferred to the Outsource Field Department, where he remained for the rest of his employment. He was given the title of Outsource Field Technician, also known as Outsource Field Specialist (collectively referred to as "Outsource Field Technician").

42.     Plaintiff Johnson's and other Outsource Field Technicians' duties consisted of staffing third-party contractors on behalf of Defendant's clients. This was necessary during periods when Defendant's employees were not available to perform the work. This was primarily the result of the employees not being located close to where the work was required.

_____

[2] In approximately February of 2016, Defendant began to reclassify some of its Desktop Support Technicians to hourly employees. *See Lucas Johnson Aff.*, Exhibit 3 at ¶ 12. Plaintiff Johnson was not included in this group.

43.    Plaintiff Johnson and other Outsource Field Technicians were responsible for finding contractors within a sixty (60) mile radius from where the work was needed. They used recruiting software to perform this task. There were specific protocols they had to follow when using the software. They were given specific instructions in regard to the contractors that were needed. These instructions were mandated by Defendant's clients. The instructions were particular to the skill and experience required of a contractor to perform the necessary work. Johnson and other Outsource Field Technicians had to follow their instructions precisely.

44.    Plaintiff Johnson and other Outsource Field Technicians primarily acted as a liaison.  This was the central focus of their role.  This role centered on having to coordinate a time for the client and the contractor to meet.  Scheduling site visits was included with this task.

45.    Johnson and other Outsource Field Technicians were also required to remote in when a contractor was on site. They had to assist the contractor with the service work required. They worked in tandem with the contractors in order to complete the assignment. Completing the assignment still consisted of basic IT work. This is the kind of work that Plaintiff Johnson and other Outsource Field Technicians performed when they were Desktop Support Technicians and were required to complete on-site field work.

46.    Plaintiff James Phelan performed similar duties. He held the title of Systems Support Technician, also known as Systems Support Engineer (collectively referred to as "Systems Technician(s)").[3]

47.    Phelan's duties mirrored those of all Systems Technicians. Similar to Desktop Support Technicians and Outsource Field Technicians, a Systems Technician's duties centered on

---

[3] Plaintiff Phelan began working for Defendant on November 28, 2011. He began as a Systems Support Technician. In approximately 2013, he was transferred to Defendant's Project Department. He acquired the position of Project Technician, also known as Project Engineer. In February of 2018, Plaintiff Phelan was demoted back to a Systems Support Technician, the title he originally held.

providing IT support to Defendant's clients. Just like Desktop Support Technicians and Outsource Field Technicians, their duties centered on resolving routine technical issues.  Plaintiff Phelan and other Systems Technicians had to handle the calls that Defendant's Desktop Support Technicians could not complete. Systems Technicians were the persons designated to handle the calls that were considered more involved or required more time to complete. However, these calls still centered on basic IT work. The focus of these calls was still routine maintenance. Examples include handling calls that affected multiple users, instead of just one. They also had to respond to routine internet outages and assist clients with basic problems concerning their email, internet speed, server errors and other routine malfunctions.

48.     Just like Desktop Support Technicians and Outsource Field Technicians, Plaintiff Phelan and other Systems Technicians would attempt to resolve all issues remotely. When the problem could not be fixed remotely, they would also have to travel to where the client was located. Upon arrival, their duties were pretty much the same as if they were working remotely. Similar to Field Service Technicians and Outsource Field Technicians, their duties still consisted of basic tasks.

49.     While performing their daily tasks, Plaintiffs and other similarly situated employees did not require any specialized training or advanced knowledge. This was regardless of whether they were a Field Service Technician, Outsource Field Technician, or a Systems Technician (collectively referred to as "Technicians").

50.     Plaintiffs and other similarly situated Technicians did not perform any analysis.

51.     Plaintiffs and other similarly situated Technicians did not interpret any information.

52.     Plaintiffs and others similarly situated did not write any administrative or analytical reports.

53.     Plaintiffs and other similarly situated employees did not write, modify, or create any software codes.

54.     Plaintiffs and other similarly situated Technicians did not analyze any software systems.  They were not employed as consultants performing high level analysis. They performed basic support tasks.

55.     Plaintiffs and other similarly situated employees did not design or develop any computer programs or prototypes of computer programs.

56.     Plaintiffs and other Technicians did not design, create or modify any computer's operating systems.

57.     Plaintiffs and other Technicians did not test any machine operating systems or computer programs.

58.     Plaintiffs and other Technicians satisfied the requirements of their position and adequately performed their duties.

59.     Plaintiffs and other Technicians performed their duties to the full extent required by Defendant.

60.     Plaintiffs and all of its Technicians were originally paid a salary.[4] Defendant subsequently converted some of its Technicians to hourly employees. This group of Technicians started to receive overtime ("time-and-a-half") pay for working over forty (40) hours a week.

61.     Although they were reclassified to hourly employees, the duties performed by these Technicians did not change. Their daily tasks remained exactly the same.

---

[4] Plaintiff Johnson was reclassified as an hourly employee in approximately March of 2016.  From then on, he began to receive overtime payments of "time-and-a-half" their regular hourly rates.  Consequently, any mention to Johnson refers to the period prior to his reclassification.

62.     The manner in which they recorded their tasks also remained the same. Prior to being reclassified, all of Defendant's Technicians tracked their time via software. Even though they were paid a salary, all of Defendant's Technicians were still required to clock-in when they arrived to work and clock-out once they were finished. The Technicians that were reclassified to hourly employees continued to clock in and out.

63.     Prior to when some Technicians were reclassified, all of Defendant's Technicians worked similar schedules. Their schedule was supposed to be from 8:00 a.m. to 5:00 p.m. Monday through Friday.  This was to include a one (1) hour break for lunch. However, the number of hours actually worked by Plaintiffs and other Technicians far exceeded this schedule.

64.     Defendant's salaried Technicians were all required to attend daily meetings. Each meeting was to begin no later than 7:55 a.m. Tardiness was unacceptable and could result in disciplinary action. These meetings were always conducted prior to when Plaintiffs' and other Technicians' shifts were to begin. This fact contributed to the overtime they worked each week. Arriving to work prior to their schedule start times was integral to their employment.

65.     Plaintiffs and other Technicians also regularly left work after the time their shifts were supposed to end. In order to finish their assignments, they would often leave well after 5:00 p.m.

66.     Understaffing significantly contributed to Plaintiffs and other Technicians having to work late. It was Defendant's practice to not hire the requisite number of Technicians needed to meet the demands of its business. This resulted in Plaintiffs and other Technicians having to work hours outside of their schedule in order to complete their workload.

67.     The fact that some of their work could not be completed during regular business hours was another reason why they had to work overtime. Many of Defendant's clients were in

different time zones, requiring Plaintiffs and other Technicians to have to work well past the time their shifts were supposed to end.

68.     Plaintiffs and other Technicians were also frequently on-call. Defendant required all of its salaried Technicians to work rotating on-call schedules. The Technicians that were subsequently converted to hourly employees were taken off the on-call schedule. Those that were not reclassified continued to be placed on-call. Because there were not as many Technicians placed in the rotating schedule, Plaintiffs and other Technicians that continued to work on call did so even more frequently. Due to the limited number of Technicians available, they could be on call for weeks at a time.

69.     While on call, Plaintiffs and other Technicians were required to respond to any service call that came in between the hours of 6:00 a.m. and 8:00 a.m., as well as 5:00 p.m. and 12:00 a.m., Monday through Friday.  On Saturdays and Sundays, their on-call schedule was from 6:00 a.m. to 12:00 a.m. The work they performed while on-call was the same work they performed during their regular shifts. This consisted of fielding customer calls and assisting Defendant's clients with basic maintenance and troubleshooting tasks. The frequency of these calls contributed to the number of hours that Plaintiffs and other Technicians worked each week.

70.     Plaintiffs and other Technicians were also required to travel to Defendant's clients' locations. This often resulted in Plaintiffs and other Technicians having to travel out of state. The consistency in which they traveled is another factor that caused Plaintiffs and other Technicians to work overtime regularly.

71.     Technicians would also regularly have to participate in "ticket-closing parties." These "parties" would always occur after the time that Plaintiffs and other Technicians were scheduled to be off.  The focus of these events was for Technicians to complete as many tickets as

they could in order to clear their queues.  These events would often last several hours after the time that Plaintiffs' and other Technicians' shifts were supposed to end.

72.     The events discussed herein caused Plaintiffs and other Technicians to regularly work over forty (40) hours a week. When Plaintiffs and other Technicians were paid a salary, they consistently worked between fifty (50) and eighty (80) hours each week. There were times when they worked even more.

73.     Despite working well over forty (40) hours per week, Plaintiffs and other similarly situated Technicians were only paid their regular salary for all or part of their employment period.

74.     There is no bona fide dispute that Plaintiffs and other similarly situated Technicians are owed overtime wages for all hours worked over forty (40) in a workweek.

75.     The duties assigned to Plaintiffs and others similarly situated do not satisfy the duties tests contained within any of the exemptions specified in the FLSA, MWHL, or the MWPCL.

76.     At all times relevant to this matter, Plaintiffs and other similarly situated employees worked as non-exempt employees for Defendant and should have been classified as such; Plaintiffs and others similarly situated should have received overtime payments for all hours worked over forty (40) per workweek.

77.     Defendant knew that Plaintiffs and other similarly situated employees customarily worked well over forty (40) hours per week.

78.     Defendant suffered, permitted and/or required Plaintiffs and other similarly situated Technicians to work these overtime hours.

79.     Defendant, acting without good faith, withheld these overtime wages, even after Plaintiffs and others similarly situated inquired about the wages missing from their paychecks.

80.     Throughout their employment, Plaintiffs made consistent complaints with regard to Defendant's failure to pay overtime wages.  Despite their numerous complaints, no action was taken to change the manner in which Plaintiffs and other similarly situated Technicians were paid.

81.     Defendant also failed to compensate Plaintiffs and other Technicians that were converted from salaried to hourly employees with the overtime wages they were entitled to prior to the reclassifications. This was despite the fact that their duties remained the same.

82.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b). Plaintiffs and the similarly situated individuals worked as Technicians (or in other positions with similar job duties) for Defendant. The proposed collective class under the FLSA is defined as follows:

> All persons who worked as Desktop Support Technicians/Engineers, Systems Support Technicians/Engineers and Outsource Field Department Technicians/Specialist, or in other positions with similar job duties, for Defendant at any time during the last three years prior to the filing of this Complaint through the entry of judgment (the "FLSA Collective"), and were compensated on a salary basis.

84.     The FLSA requires employers to compensate non-exempt employees, such as Plaintiffs and others similarly situated, with overtime wages for all hours worked over forty (40) within a workweek.

85.     Defendant knew that Plaintiffs and other similarly situated Technicians did not qualify for any exemption to the FLSA's overtime provision.

86.     Defendant knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

87.     Defendant, suffered, permitted, and/or required Plaintiffs and other similarly situated Technicians to work more than forty (40) hours per week.

88.     Defendant knew or should have known that Plaintiffs and other similarly situated Technicians were entitled to overtime pay for all hours worked over forty (40) in a workweek.

89.     Beginning in 2016, Defendant began to reclassify some of its salaried Technicians to hourly employees. However, Defendant intentionally retained Plaintiff Phelan and others similarly situated as salaried employees.

90.     Regardless of the number of hours Plaintiffs and other similarly situated employees worked per week, Defendant did not pay them any additional pay for working over forty (40) hours.[5]

91.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

92.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rates of pay for all hours worked over forty (40) in any workweek within the applicable statutory period. Plaintiffs make these same demands on behalf of all members of the putative Collective class.

93.     Plaintiffs consent to be party Plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibits 1 and 2. As this case proceeds, it is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

---

[5] In approximately March of 2017, Defendant reclassified the Technicians in its Outsource Field Department to hourly employees. However, Defendant did not properly compensate Plaintiff Johnson and others similarly situated for the overtime hours they worked previously. Therefore, the Collective class covers (1) all similarly situated employees who failed to receive back wages after the reclassification and (2) all similarly situated employees who were not reclassified during the relevant time period.

94.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA and are thereby fit for membership in the Collective class of similarly situated employees.

95.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

96.     Notice of this action should be sent to all similarly situated employees. Many current and former employees of Defendant have been denied proper overtime compensation and would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

97.     Upon information and belief, other similarly situated employees will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

98.     Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other employees that work or worked as Desktop Support Technicians/Engineers, Systems Support Technicians/Engineers and Outsource Field Technicians/Specialist for Defendant and were subject to the following practices and policies:

99.     Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek; and

100.     Denial of all wages owed to Plaintiffs and others similarly situated at the termination of their employment;

101.     The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

All individuals who are or were employed by Defendant as Desktop Support Technicians/Engineers, Systems Support Technicians/ Engineers and/or Outsource Field Technicians/Specialists for any period ranging from October 2015 to the present, who were paid on a salary basis and not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek, in violation of MWHL.

*MWPCL Class*

All individuals who were, but are no longer, employed by Defendant as Desktop Support Technicians/Engineers, Systems Support Technicians/Engineers and/or Outsource Field Technicians/ Specialists for any period ranging from October 2015 to the present, who were paid on a salary basis and not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek and thus, did not receive all wages owed to them before the termination of their employment, in violation of the MWPCL.

102.   *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, on information and belief, the class includes dozens of employees who are readily identifiable through Defendant's pay records.  Defendant employs dozens of Technicians across the state of Maryland.  According to its website, Defendant services over six hundred and five (650) dealerships across the United States.  Consequently, numerosity exists.

103.   *Commonality:* There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiffs and the classes are:

i.   Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

ii.   Whether Defendant employed the MWHL Class within the meaning of MWHL;

18

iii.   Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

iv.   Whether Defendant's violations of MWHL were willful;

v.   Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

vi.   Whether Defendant failed to provide Plaintiffs and other members of the MWPCL Class with all wages due at the time their employment ended;

vii.   Whether Defendant's violations of MWPCL were willful; and

viii.   Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

104.   *Typicality:* Plaintiffs' claims are typical of those of the classes.  Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as a Desktop Support Technician/Engineer, Systems Support Technician/Engineer and/or Outsource Field Technician/Specialist for Defendant.  Each and every MWHL Class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule and regular understaffing.  Each member for both classes was paid a salary that remained unchanged, regardless of whether the class member worked over forty (40) hours per week.  Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment.  As a result, each and every class member suffered the same harm.  This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek and the subsequent failure to pay to Plaintiffs and other members of the MWPCL Class all wages owed to

them at the conclusion of their employment.  This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

105.   *Adequacy:* Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of the law and the same damage theory.  Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions.  Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

106.   *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts.  This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL.  Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid as well as the amount of time each class member worked.

107.   This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

108.   Accordingly, the Court should certify the proposed classes.

## **CAUSES OF ACTION AND VIOLATIONS OF LAW**

### ***Count I. Violation of the FLSA: Failure to Pay Overtime Wages***

109.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

110.    Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

111.    As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

112.    Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

113.    There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

114.    All members of the putative Collective are similarly situated to Plaintiffs, and have suffered the same and/or similar harm resulting from the same policies and practices complained of in this Complaint.

115.    Under the FLSA, Plaintiffs and all members of the Collective are entitled to additional wages from Defendant to compensate them for working over forty (40) hours a week at a rate of one and one-half (1.5) times Plaintiffs' and each member of the Collective's regular hourly wage rate.

### *Count II. Violation of MWHL: Failure to Pay Overtime Wages*

116.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

117.    Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

118.    Plaintiffs have not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

119.    Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

120.    There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

121.    All members of the MWHL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

122.    Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' and each MWHL Class member's regular hourly wage rate.

### *Count III. Violation of the MWPCL: Failure to Pay Wages Owed*

123.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

124.    Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of his or her

employment, on or before the day on which the employee would have otherwise been paid the wages.

125.    In accordance with §3-505(a), Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment. This is specific to Defendant's failure to pay Plaintiffs the overtime wages that they are entitled to.  For the same reason, Defendant failed to pay the members of the MWPCL Class correctly.

126.    Defendant willfully and intentionally did not compensate Plaintiffs or members of the MWPCL Class for the wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

127.    All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

128.    Under the MWPCL, there is no bona fide dispute that Plaintiffs and the MWPCL Class are owed wages for the work they performed while employed by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiffs and all members of the proposed classes;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d)  Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e)  Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f)  Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWHL Class, and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g)  Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWPCL Class, and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h)  Judgment against Defendant and classifying its conduct as willful and not in good faith;

i)  Judgment against Defendant and classifying Plaintiffs, the Collective and the Classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j)  An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the Collective, members of the MWHL Class and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and others' respective regular hourly rate for all overtime hours worked;

k)  An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the Collective, members of the classes and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

l)  An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

m) Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

n)  All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
George E. Swegman, Esq. (19444)
gswegman@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*