```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

TYLER JOHNSON, et al.,           :
Individually and on behalf of
similarly situated employees     :

   v.                            :   Civil Action No. DKC 18-3276

                                 :
HELION TECHNOLOGIES, INC.
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") case is a motion filed by Helion Technologies, Inc. ("Helion") to reconsider the previous order granting summary judgment in favor of William Toomey on Helion's counterclaim for breach of contract and on Mr. Toomey's corresponding claim for FLSA retaliation. (ECF No. 109). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to reconsider will be denied.

**I.   Background**

In January, Helion moved for summary judgment on the FLSA claims against it. (ECF No. 89). Plaintiffs opposed and filed a cross-motion for summary judgment on Helion's breach of contract counterclaim against Mr. Toomey and Mr. Toomey's FLSA retaliation claim. (ECF No. 92). Defendant replied and opposed the cross-motion. (ECF No. 95). Mr. Toomey replied. (ECF No. 96).

In their cross-motion, Plaintiffs argued that Helion "was unable to prove" that Mr. Toomey engaged in "personal frolics." (ECF No. 92-1, at 11). In its opposition, Helion produced Exhibits 4 and 5 purporting to summarize GPS data derived from Mr. Toomey's company-provided vehicle, supported by an affidavit from its Human Resources ("HR") Vice President ("VP"). (ECF No. 95, at 22). In reply, Mr. Toomey sharpened his argument, asserting that the exhibits "lack[ed] the necessary foundation to be admissible." (ECF No. 96, at 6). There was no indication of "who created the exhibits and the information used to support them," how the locations were identified, nor the process by which, or the basis for, the categorizations included, such as whether a stop was at a non-Helion client location or was personal. (*Id.*). Mr. Toomey also attacked the accuracy of the exhibits. (*Id.*, at 6-7).

In response, Helion moved for additional discovery and leave to file amended versions of the exhibits. (ECF No. 99). It did not move to file a surreply. At a recorded telephone conference, the court questioned Helion's counsel about its new requests and its ability to authenticate Exhibits 4 and 5. Counsel conceded that Helion's ability to prove that Mr. Toomey engaged in personal frolics—the sole basis for its breach claim—hinged entirely on the two exhibits. Counsel pointed only to the HR VP's affidavit as foundation. Neither the affidavit nor counsel identified who compiled the exhibits, what public mapping website was used to

2

convert the latitude and longitude coordinates to locations on a map, nor how street addresses and associated business names were assigned to each location. Counsel indicated that unnamed Helion officials identified those stops that were not client locations by comparing GPS-derived street addresses against their personal knowledge of client addresses.

In the memorandum opinion accompanying the preceding order, Helion was found not to have adequately shown that Exhibits 4 and 5 could be produced in admissible form because it offered almost no information describing how the documents were prepared. (ECF No. 106, at 46-50). The failure to produce any evidence of breach that could be admissible left Helion's contract claim totally baseless because it had no basis in fact and left the company unable to meet its burden of production on Mr. Toomey's retaliation claim. (*Id.*). Mr. Toomey was entitled to judgment on both claims.

## II.  Standard of Review

Helion does not identify the applicable legal standard for its motion to reconsider. (*See generally*, ECF Nos. 109, 109-1). Fed.R.Civ.P. 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Chief Judge Bredar recently explained:

> Motions for reconsideration of interlocutory orders—meaning non-final orders issued during the course of litigation—"are not subject to the strict standards applicable to motions for reconsideration of a final

> judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). "In considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has obviously misapprehended a party's position or the facts or applicable law." *Cohens v. Md. Dep't of Human Res.*, 933 F.Supp.2d 735, 742–43 (D.Md. 2013) (internal quotation marks and citations omitted).

*Brown v. Frazier*, No. 21-1000-JKB, 2021 WL 2338827, at *1 (D.Md. June 8, 2021).

**III. Analysis**

On the contract claim, Helion argues that the court was wrong to find that it could not produce Exhibits 4 and 5 in admissible form.[1] On the retaliation claim, Helion contends that the court was wrong to find its breach claim baseless and to conclude it was motivated by retaliatory animus. Because it merely restates "the same arguments raised in [its] previous motion," the company "fails to articulate a basis for reconsideration[.]" *Brown*, 2021 WL 2338827, at *1. In any case, the preceding order was correct for the reasons discussed below.

---

[1] The parties' attempts to rehash whether Helion should have produced Exhibits 4 and 5 in discovery are not addressed here. The preceding order was motivated by Helion's failure to satisfy Rule 56(c) and merely acknowledged that Rule 26 discovery requirements supported the same result. (ECF No. 106, at 50).

4

A.   **Breach of Contract Counterclaim**

At summary judgment, a party must "explain[] the admissible form that is anticipated" for its cited materials once the opposing party objects that the materials cannot be produced as admissible evidence. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538-39 (4th Cir. 2015) (quoting Fed.R.Civ.P. 56 advisory committee note). Courts "have great flexibility with regard to the evidence that may be used" at summary judgment. *Id.*, at 538 (quotation omitted).

Mr. Toomey objected to Helion's ability to authenticate Exhibits 4 and 5. Authentication requires that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid. 901(a). More often than not, this is done through testimony of a witness with knowledge that the item is what it is claimed to be. Fed.R.Evid. 901(b)(1). For computer processes or systems, this can be done through evidence "describing [the] process or system and showing that it produces an accurate result." Fed.R.Evid. 901(b)(9).

Helion's exhibits incorporated at least six different items of evidence: (1) latitude and longitude coordinates, (2) geospatial locations on a map derived from the coordinates, (3) street addresses approximated from either the coordinates or map locations, (4) business names associated with the street addresses, and (5) Helion-client status presumably derived by

5

comparing the street addresses against (6) corporate knowledge of Helion client addresses.  It was Helion's burden to explain how it would authenticate each item.  It failed at summary judgment and offers nothing new on reconsideration.[2]

Helion's arguments only touch on four items of evidence above.  That alone is fatal to its efforts to explain how it would produce Exhibits 4 and 5 in admissible form.  The company has simply made no effort to explain who would identify the street addresses and business names or how they would do so.  Its attempted explanations fare little better.  First, it contends that the court could have taken judicial notice of the accuracy of the first two items: the latitude and longitude coordinates and the geospatial locations on a map derived from those coordinates. (ECF No. 109-1, at 2).  Even if GPS technology's known attributes or the HR VP affidavit were sufficient to show the GPS device used here was accurate and reliable, *see United States v. Brooks*, 715 F.3d 1069, 1078 (8th Cir. 2013), Helion still does not identify which mapping software it used to create Exhibits 4 and 5.  A court cannot take judicial notice of the accuracy and reliability of "Google Earth or any

---

[2] Helion implies that it did not have an adequate opportunity to respond to Mr. Toomey's objections, which were raised on reply. (ECF No. 109-1, at 3 n.1).  The recorded conference was primarily to discuss Helion's request for additional discovery, so counsel should have been prepared to discuss the evidence it thought it already had available.  In any event, Helion still has not proffered an adequate explanation even now, let alone one that is more robust than initially offered.

similar program[.]" (*Id.*); *see United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (identifying the specific mapping software used). Helion offers nothing more.

Second, the company argues that, for the sixth item, the court could either presume that the HR VP had personal knowledge of its clients' addresses or rely on his affidavit for the same. (ECF No. 109-1, at 3-4). It also suggests the same knowledge could be sourced from unidentified corporate documents. (*Id.*). It then asserts that, for the fifth item, the HR VP or someone else at the company could have compared the GPS-derived street addresses against client addresses to assign a Helion-client status to each. (*Id.*). Even if Helion adequately explained how it would have identified whether each location was a Helion client address, it did not explain how it would have derived the street addresses needed to compare against client addresses. Several links in the chain between the latitude and longitude coordinates and the client identification are still missing.

At its core, Helion's position appears to be that the court should have found that it could put Exhibits 4 and 5 into admissible form because it is easy to imagine how it could do so. That approach puts the cart before the horse—it would leave proponents without any burden actually to explain how they intend to show that their purported evidence is what they claim it to be. It would also convert assumed authenticity into a finding of likely

7

authenticity.  That is not what Rule 56(c)(2) commands.  A party must explain how it will put its evidence in admissible form, even if it would ordinarily be easy to do so.  This is usually not a heavy burden; the proponent need only "show that it will be possible[.]"  *Humphreys*, 790 F.3d at 538-39 (quotation omitted).  Given differences across cases and items of evidence, the required depth of explanation varies.  But it always requires some showing.  Where, as here, an employer's claim against its former employee is alleged to be retaliatory, it would be particularly inappropriate simply to take the employer at its word.

At a minimum, Helion was required to persuade this court that it could make a showing sufficient for a reasonable juror to conclude that Exhibits 4 and 5 are what it says they are.  It could not do that and Mr. Toomey was therefore entitled to judgment.

### B.   FLSA Retaliation Claim

The core issues are whether Mr. Toomey established (1) a materially adverse action, and (2) that Helion was motivated by retaliatory animus.  To make out a *prima facie* case, a plaintiff can establish a materially adverse event by showing that the employer filed a baseless claim that is "without a reasonable basis in fact or law."  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341, 343 (4th Cir. 2008) (citations omitted).  Although a party's failure to meet its burden of proof is not, as a general matter, enough to conclude a suit is factually baseless, *BE & K Constr. Co. v. NLRB*,

8

536 U.S. 516, 533 (2002), it is enough where a plaintiff's claim has "no credible evidentiary support," *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 473 (S.D.N.Y. 2008); *see also Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 745-46 (1983) (suggesting claims may be factually baseless where a plaintiff fails to generate "a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts"). A claim whose central allegation is unsupported by any authentic evidence is one without a reasonable basis in fact. Helion's sole remaining argument therefore misses the mark. (*See* ECF No. 109-1, at 5). That the company can point to evidence it cannot show is authentic does not alter this result. Helion cannot have reasonably relied on altogether insubstantial evidence in filing suit.

Once plaintiff makes out a *prima facie* case, as Mr. Toomey did here, a presumption of retaliatory intent arises. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). An employer can rebut that presumption with admissible evidence of a legitimate, non-retaliatory reason for its lawsuit. *Id.* Where an employer fails to produce such evidence, the presumption remains and the employee is entitled to judgment as a matter of law. *Id.* at 509-10. That is just what happened here. In granting summary judgment to Mr. Toomey, the court did not, as Helion argues, (ECF No. 109-1, at 6), improperly resolve any disputes of material fact

9

or make credibility determinations.  It instead awarded judgment to Mr. Toomey, as bound to do, because Helion failed to rebut the presumption that it acted with a retaliatory motive.

**IV. Conclusion**

For the foregoing reasons, Helion's motion to reconsider will be denied.  A separate order will follow.

                                                    /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge