IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TYLER JOHNSON, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 18-3276 |
| | : | |
| HELION TECHNOLOGIES, INC. | : | |
| | : | |

**MEMORANDUM OPINION**

Pending and ready for resolution in this Fair Labor Standards Act case are the motions of both parties for attorneys' fees and costs.  (ECF Nos. 159, 160, 183, 184).   The issues have been briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, each party's motion will be granted in part and denied in part.

## I.   Background[1]

Former Plaintiffs Tyler Johnson and James Phelan filed this lawsuit on October 23, 2018, on behalf of themselves and others similarly situated, alleging that Defendant Helion Technologies, Inc. ("Helion") failed to pay them overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* ("MWHL"), and the Maryland Wage Payment and

---

[1] A more detailed factual summary is set out in a prior opinion.  (ECF No. 106); *Johnson v. Helion Tech. Inc.*, No. 18-CV-3276-DKC, 2021 WL 3856239 (D.Md. Aug. 27, 2021).

Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*
("MWPCL").  (ECF No. 1).  They sought unpaid wages, liquidated
damages, treble damages, interest, attorneys' fees, and costs.
Plaintiffs William Toomey, Joseph McCloud, and Milton Turnerhill
joined the lawsuit on November 8, 2018, October 29, 2019, and
December 3, 2019, respectively.[2]  (ECF Nos. 5, 56, 59).  Other
Plaintiffs joined, but many of them, along with the two original
Plaintiffs, were dismissed before trial for various reasons.  (ECF
Nos. 36, 54, 76, 77, 107, 139).

The Plaintiffs then in the case filed a motion for conditional
certification of the FLSA collective on December 21, 2018, and
over Defendant's opposition, the motion was granted on September
17, 2019.  (ECF Nos. 11, 21, 49).  The parties' conditional
certification notification plan was approved, and Plaintiffs'
counsel administered the mailing of the notices and opt-in forms
to the potential members of the collective.  (ECF Nos. 51, 52,
159-4 at 3).

Meanwhile, on December 6, 2018, Defendant filed a lawsuit in
state court against Plaintiff Toomey, alleging that he had breached
his employment contract.  Plaintiff Toomey, represented by the
same counsel as in the present case, filed a counterclaim against

---

[2] Unless described more specifically, references to
"Plaintiffs" in this opinion refer to Plaintiffs Toomey,
Turnerhill, and McCloud—the only Plaintiffs seeking attorneys'
fees and costs.

Defendant for retaliation under the FLSA and removed the action to federal court on January 4, 2019.  *See Helion Tech., Inc. v. Toomey*, No. 19-CV-0037-DKC, ECF Nos. 1, 6.  Defendant later filed an amended answer in the present case to assert its claim as a counterclaim in the original lawsuit, (ECF Nos. 41), and the other lawsuit was dismissed without prejudice on December 23, 2019.  The complaint in the present case was eventually amended to add Plaintiff Toomey's counterclaim for retaliation.  (ECF No. 88).

Also in late 2018, Defendant extended Plaintiff Toomey an Offer of Judgment, pursuant to Federal Rule of Civil Procedure 68. The offer, made on December 14, 2018, stated the following:

> Defendant Helion Technologies, Inc. . . . pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby submits this Offer of Judgment to Plaintiff William Toomey and offers to allow judgment to be entered against Defendant, and in favor of Plaintiff Toomey, in the total amount of $11,305.00, exclusive of attorneys fees and costs[.]

(ECF No. 160-1).  Plaintiff Toomey rejected the offer on December 27, 2018.  (ECF No. 160-2).  Other former Plaintiffs received separate offers and accepted them.

The parties engaged in discovery, during which eight total witnesses were deposed, and Defendant produced over 17,000 documents.  (ECF No. 159-4 at 5).  In July 2020, the remaining Plaintiffs moved for voluntary dismissal of eight Plaintiffs, which was granted; by the time the parties filed their summary

judgment motions, only four Plaintiffs remained in the case. (ECF No. 76, 77, 81, 89-1 at 4). Defendant moved for summary judgment in its favor as to the remaining Plaintiffs' claims, and the remaining Plaintiffs moved for summary judgment in their favor as to Defendant's counterclaim against Plaintiff Toomey and as to Plaintiff Toomey's retaliation claim against Defendant. (ECF Nos. 89, 92). While the motions were pending, Defendant filed a motion for leave to conduct additional discovery, which the remaining Plaintiffs opposed. (ECF Nos. 99, 100). On August 27, 2021, the court denied Defendant's motion for additional discovery, denied Defendant's motion for summary judgment,[3] and granted the remaining Plaintiffs' motion for summary judgment. (ECF No. 106). Judgment was entered in favor of Plaintiff Toomey and against Defendant on Defendant's counterclaim in full and as to liability on the retaliation claim, with damages for the latter left for adjudication at trial. (ECF No. 107). Defendant filed a motion for reconsideration of that determination, which the remaining Plaintiffs opposed, and the court denied the motion on October 12, 2021. (ECF Nos. 109, 110, 112).

A jury trial was set to begin on March 21, 2022, with the four remaining Plaintiffs: William Toomey, Milton Turnerhill,

---

[3] More precisely, the court denied Defendant's motion "except as to any MWPCL claims asserted by Mr. McCloud, Mr. Turnerhill, or Mr. Carroll," although Plaintiffs assert that there were none. (ECF Nos. 106 at 60, 159-1 at 5 n.1).

Joseph McCloud, and Wayne Carroll.  (ECF No. 114).  Plaintiff Toomey sought relief under the MWHL and the MWPCL, in addition to the FLSA; the others sought relief only under the FLSA.  (ECF No. 120).  Both parties filed motions in limine.  The trial lasted approximately one week, and the jury rendered a verdict on March 28, 2022.  (ECF Nos. 142-148).  The jury found in favor of Plaintiffs Toomey, Turnerhill, and McCloud and against Plaintiff Carroll, finding that Plaintiff Carroll's position was exempt from the relevant FLSA provision under the "Computer Employee exception," while the others' positions were not.  (ECF No. 156). The jury awarded $1,420 to Plaintiff McCloud, $4,044.50 to Plaintiff Turnerhill, and $10,819 to Plaintiff Toomey in unpaid overtime wages.[4]  The jury found that Defendant had not willfully violated the FLSA or acted in bad faith, thus precluding an award of treble damages to Plaintiff Toomey under the MWPCL.  *See* Md.Code Ann., Lab. & Empl. § 3-507.2(b).

Following the verdict, the court awarded Plaintiff Toomey nominal damages of $1.00 on his retaliation claim, having found during trial that he had not produced sufficient evidence of actual emotional distress damages.  (ECF No. 149 at 1).  The issue of whether Plaintiffs were entitled to liquidated damages under the

---

[4] The jury awarded $10,819 to Plaintiff Toomey for both his FLSA and state law claims, but because those damages were for the same "injury," the court ordered that he would only be awarded a single recovery.  (ECF No. 149 at 3).

FLSA in an amount equal to their unpaid wages was tried to the court rather than the jury, and the court declined to award any liquidated damages, based on a finding that Defendant had acted in good faith.  (ECF No. 149 at 2-3).  In total, Plaintiffs were awarded $16,284.50.

On April 11, 2022, Plaintiffs filed a motion for attorneys' fees and costs.  (ECF No. 159).  Defendant filed its own motion for attorneys' fees and costs, as to the claims of Plaintiff Toomey, on April 12, 2022.  (ECF No. 160).   On April 26, 2022, Defendant filed a motion to alter or amend judgment, which Plaintiffs opposed.  (ECF Nos. 163, 164).  The motion was denied on August 2, 2022.  (ECF No. 174).  Defendant filed a notice of appeal on September 1, 2022.  (ECF No. 176).  After an unsuccessful court-ordered mediation, Defendant voluntarily dismissed the appeal.  The United States Court of Appeals for the Fourth Circuit issued a mandate dismissing the appeal on October 18, 2022.  (ECF No. 179).  The parties filed supplements to their original motions for attorneys' fees and costs on November 9, 2022.  (ECF Nos. 183, 184).  They also filed responses to each other's motions and replies.  (ECF Nos. 185, 189, 190, 191).

## II.  Defendant's Motion

Defendant has moved for an award of attorneys' fees and costs for the work done by its attorneys and costs expended on the claims by Plaintiff Toomey after he rejected the offer of judgment.  (ECF

6

Nos. 160, 184). Defendant argues that, because it made an offer of judgment for an amount that was greater than the amount Plaintiff Toomey was ultimately awarded at trial, it is entitled, pursuant to Federal Rule of Civil Procedure 68, to recoup its attorney's fees and costs incurred after the offer was made.

Rule 68 provides that a defendant may, at least 14 days before trial, "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." If the offeree does not accept and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." These "costs" include both the offeree's costs *and* the offeror's. *See Said v. Va. Commonwealth Univ./Med. Coll. of Va.*, 130 F.R.D. 60, 63 (E.D.Va. 1990); *see also* Steven S. Gensler & Lumen N. Mulligan, *2 Federal Rules of Civil Procedure, Rules and Commentary Rule 68* (Feb. 2023) ("If the plaintiff rejects the offer and then wins the case, but the ultimate judgment fails to beat the offer, then . . . the plaintiff does not receive its post-offer costs and must pay the defendant's post-offer costs."). In this case, the offer was for $11,305, and Plaintiff Toomey was only awarded $10,820 at trial.

Plaintiffs argue that Defendant is not entitled to attorney's fees and costs based on the unaccepted offer of judgment for a few reasons: (1) the offer was not a valid Rule 68 offer and (2) even

if the offer were valid, Defendant would only be entitled to costs and not attorney's fees.  (ECF No. 185).  Each argument will be addressed in turn.[5]

### A.   Validity of the Offer

Plaintiffs argue that the offer was not a valid Rule 68 offer of judgment because (1) it "was not an attempt to settle the 'dispute' between the parties when there was an outstanding Breach of Contract claim against Plaintiff [Toomey] in a related matter" and (2) the offer was "exclusive of attorneys['] fees and costs."[6] (ECF Nos. 185 at 6, 190 at 2).

---

[5] Plaintiffs also argue in a footnote that the amount Plaintiff Toomey eventually obtained *was* more favorable than the offered amount because the amount Defendant paid him, once post-judgment interest was added, was $11,395.10.  (ECF No. 185 at 4 n.2).  However, they cite no case law for the proposition that the favorability of an amount awarded at trial should be judged including post-judgment interest, and they fail to contend with the fact that Plaintiff Toomey would likely have also been entitled to post-judgment interest had he accepted the offer of judgment. *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 635-36 (6th Cir. 2020); *see also* Steven S. Gensler & Lumen N. Mulligan, *2 Federal Rules of Civil Procedure, Rules and Commentary Rule 68* (Feb. 2023) ("An accepted Rule 68 offer leads to the court entering judgment against the defendant.  Accordingly, courts have held that statutory post-judgment interest accrues automatically under 28 U.S.C.A. § 1961 unless the terms of the accepted offer provide otherwise.").  Therefore, this argument is unpersuasive.

[6] The second argument was raised for the first time in Plaintiffs' reply to Defendant's opposition to their own motion for attorneys' fees and costs.  However, because the parties' motions are intertwined, and because Defendant had an opportunity to respond to the argument in its reply to Plaintiff's opposition to its motion, the court will consider the argument.

Plaintiffs cite no authority for their first argument, other than an out-of-circuit case, which states that the purpose of Rule 68 is "to encourage the settlement of private disputes." *See Crossman v. Marcoccio*, 806 F.2d 329, 331 (1st Cir. 1986). There is nothing in the plain language of Rule 68 that suggests that a Rule 68 offer must resolve all claims in a particular case, let alone all claims that exist between the parties. Indeed, the rule refers to "a party defending against *a claim*," which would suggest that the offer can be to settle a particular claim and not necessarily the entire lawsuit. *See Cont. Materials Processing, Inc. v. KataLeuna GmbH Catalyst*, No. 98-CV-147-AMD, 2008 WL 11336594, at *2 (D.Md. Oct. 30, 2008) ("[T]here is nothing in the text of Rule 68 that requires an offer of judgment to result in a final judgment and disposition of the entire litigation. Rather, Rule 68 provides that a defendant may make an offer as to a *claim*."). Accordingly, the fact that a separate lawsuit involving a separate claim between the parties would have persisted if Plaintiff Toomey had accepted the offer does not make the offer invalid.

Plaintiffs' other argument also fails. It is correct that an offer of judgment only triggers the terms of Rule 68 if it "does not implicitly or explicitly provide that the judgment *not* include costs." *See Marek v. Chesny*, 473 U.S. 1, 6 (1985). If the offer is silent as to the amount of costs included, "the court will be

obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." *Id.* (citation omitted). Plaintiffs argue that the language in the offer "exclusive of attorneys['] fees and costs" meant that the *judgment* would not include costs. Defendant states that it used that language "to clarify that, if [Plaintiff] Toomey accepted the Offer of Judgment, he would have the opportunity to file a motion seeking an award of attorney's fees and costs incurred by him prior to service of the Offer of Judgment on him." (ECF No. 160 at 2 n.2).

Defendant's reading is the better one. The word "exclusive" in this context, especially in light of the well-established requirements of Rule 68, indicates that the sum offered excluded fees and costs while contemplating that appropriate fees and costs would be added later to the judgment. Other courts have interpreted similar language in this way. *See, e.g.*, *Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F.Supp.2d 1170, 1175 (D.Or. 2010) (interpreting "exclusive of recoverable attorney fees and costs" to mean that the offered sum "covered all claims except fees and costs, thus leaving fees and costs to be determined"); *Klein v. Floranada Warehouse & Storage, Inc.*, No. 15-60032-CIV, 2016 WL 8671074, at *2 (S.D.Fla. July 19, 2016), *report and recommendation adopted*, No. 15-60032-CIV, 2016 WL 8670501 (S.D.Fla. Aug. 23, 2016) (interpreting "exclusive of

10

attorneys' fees and costs and any other litigation expenses thus far accrued" as contemplating "that this Court would, in its discretion, determine the amount of fees, costs and expenses to award in addition to the" sum offered); *Gary v. Carbon Cycle Ariz. LLC*, 398 F.Supp.3d 468, 474, 492 (D.Ariz. 2019) (awarding fees to a plaintiff who accepted a Rule 68 offer that was "exclusive of taxable court costs and attorney's fees"); *D'Orazio v. Washington Twp.*, 501 F.App'x 185, 186-87 (3ᵈ Cir. 2012) (using the language "exclusive of attorneys' fees and costs" to describe a Rule 68 offer to which attorneys' fees and costs were later added); *but see DaSilva v. Vozzcom, Inc.*, No. 08-80040-CIV, 2009 WL 10667450, at *3 (S.D.Fla. June 9, 2009) (finding that the phrase "exclusive of all costs and attorneys' fees now accrued" ran "afoul of Rule 68" and was "invalid").

Defendant's interpretation is also supported by the fact that a former Plaintiff in this case was extended a Rule 68 offer of judgment at the same time with this same language, accepted the offer, and was later granted attorneys' fees by the court at an amount the parties had negotiated separately. (ECF No. 35 at 2, 8-9). The parties never questioned whether the offer contemplated that attorneys' fees and costs would be included in the final judgment for that Plaintiff. Accordingly, Plaintiff Toomey's offer will be interpreted the same way: to include a to-be-

determined attorneys' fees and costs award and, therefore, to be valid under Rule 68.

### B.   Entitlement to Attorneys' Fees

Plaintiffs argue that even if the offer was valid, it would only entitle Defendant to recover costs, not attorneys' fees.  In *Marek v. Chesny*, 473 U.S. at 9, the Supreme Court held that "all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs,'" meaning that "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, . . . such fees are to be included as costs for purposes of Rule 68."

Plaintiffs argue that the relevant "underlying statute" here is the FLSA because at the time Defendant made the offer of judgment, Plaintiff Toomey had only consented and opted in to the FLSA claims in the complaint; he later amended the complaint to join the MWHL and MWPCL claims.  (ECF Nos. 5, 12-1).  The FLSA provides that a prevailing plaintiff may recover "a reasonable attorney's fee to be paid by the defendant, and costs of the action," which courts have interpreted as defining "attorney's fees" separately from "costs."  29 U.S.C. § 216(b); *see, e.g.*, *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 260 (5th Cir. 2018); *Haworth v. State of Nev.*, 56 F.3d 1048, 1051 (9th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994); *Molina v. KP Stoneymill, Inc.*, No. 19-CV-3123-GLS, 2021 WL 2805838, at *3 (D.Md.

July 6, 2021*).*  The MWHL and MWPCL, on the other hand, provide
that prevailing plaintiffs can recover "counsel fees and other
costs," which would seem to define attorneys' fees as part of
"costs."  Md. Code Ann., Lab. & Empl. §§ 3-427(a)(3), 3-507.2(b).

Defendant does not dispute that only the FLSA claim existed
as to Plaintiff Toomey at the time it made the offer to him, nor
does it dispute that the FLSA defines attorneys' fees separately
from costs.  Instead, it argues that MWHL and MWPCL should be
considered the "underlying statute[s]" for the purpose of
determining whether Plaintiff's rejection of the Rule 68 offer
entitles Defendant to attorneys' fees in addition to costs.  (ECF
No. 191 at 2-3).  The court disagrees.  When Plaintiff Toomey
rejected the offer, the risk he faced in doing so was that he would
have to pay Defendant's costs as defined by the FLSA, which was
the only statute under which he had a claim against Defendant at
the time.  Defendant never renewed its offer of judgment once the
complaint was amended to add Plaintiff Toomey to the state law
claims.  It would be unfair to inject attorneys' fees into the
equation retroactively based on subsequent developments in the
litigation when the risk of paying attorneys' fees did not exist
at the time Plaintiff Toomey faced that decision.  Accordingly,
Plaintiff Toomey is only obligated to reimburse Defendant for its

costs, not including attorneys' fees.[7]  However, Plaintiff Toomey's rejection of the Rule 68 offer may still play a role in the determination of a reasonable fee award to Plaintiffs.

### C.   Cost Award

Defendant has represented, through the affidavit of its attorney, that its costs incurred for the deposition of Plaintiff Toomey were $612.25.  (ECF No. 184-3 at 3).  A receipt for the deposition reflecting that amount is attached to Defendant's motion.  (ECF No. 184-5).  Those are the only costs, aside from attorneys' fees, that Defendant seeks, and Plaintiffs have not challenged that amount.  The request is reasonable.  Accordingly, Defendant will be awarded $612.25 in costs.

---

[7] In reaching this conclusion, it is unnecessary to rule on the other argument raised by the parties: that a defendant cannot recover its own attorneys' fees based on Rule 68 anyway.  The Fourth Circuit has yet to weigh in on this question, but many other circuits have concluded that Rule 68 generally cannot force a prevailing plaintiff to pay a *defendant's* post-offer attorneys' fees, even if the relevant statute defines them as part of costs. *See, e.g.*, *Hescott v. City of Saginaw*, 757 F.3d 518, 528 (6th Cir. 2014); *Stanczyk v. City of New York*, 752 F.3d 273, 282 (2d Cir. 2014); *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1030-1031 (9th Cir. 2003); *Le v. Univ. of Pa.*, 321 F.3d 403, 411 (3d Cir. 2003); *Payne v. Milwaukee Cnty.*, 288 F.3d 1021, 1026-27 (7th Cir. 2002); *E.E.O.C. v. Bailey Ford, Inc.*, 26 F.3d 570, 571 (5th Cir. 1994); *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1120 (8th Cir. 1989); *Crossman v. Marcoccio*, 806 F.2d 329, 333-334 (1st Cir. 1986); *but see Jordan v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997); *see also* Steven S. Gensler & Lumen N. Mulligan*, 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 68* ("No shifting of *defendant's* post-offer attorney's fees.").

**III. Plaintiffs' Motion**

The FLSA requires that prevailing plaintiffs be awarded reasonable attorneys' fees and costs.   29 U.S.C. § 216(b). Defendant does not dispute that Plaintiffs Toomey, Turnerhill, and McCloud were "prevailing parties," as they undoubtedly succeeded "on [a] significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   Indeed, the jury found that Defendant failed to pay each of them overtime in violation of the FLSA and awarded each of them damages in the form of unpaid overtime.   (ECF No. 156).   Having determined that Plaintiffs are entitled to attorneys' fees and costs, the next step is to determine a reasonable fee award.   Reasonable costs will be determined as well.

In calculating a reasonable fee award, a court follows "a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).   First, it "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (internal quotation marks omitted).   Second, it "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (internal quotation marks omitted).   Third, it "award[s] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks omitted).

15

**A.    Lodestar Calculation**

The lodestar calculation requires determining the reasonable hours expended on the case and reasonable rates for those hours. In making this determination, courts consider the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *See McAfee*, 738 F.3d at 88.  Although the court must consider those factors, it "need not address in detail every single one of them" and can focus on the factors that are relevant to this particular case. *See Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F.Supp.2d 516, 526 (E.D.Va. 2011); *see also Martin v. Mecklenburg Cnty.*, 151 F.App'x 275, 283 (4th Cir. 2005) ("[W]e do not believe that the twelve factors must all be considered in each and every case.").

16

Beginning with the first factor, the court must analyze the reasonableness of the time and labor expended. Plaintiffs have calculated their lodestar figure as $542,262, based on 2,002.4 hours of work. (ECF No. 183-1 at 4). This includes hours for case development, discovery, motions practice, trial, and initial work on the appeal. In determining whether the hours Plaintiffs' counsel expended were reasonable, the court will exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Plaintiffs bear the burden to establish their entitlement to the award they seek. *Id.* at 437.

Appendix B to the Local Rules provides guidance regarding compensable time that courts in this district look to in deciding fee awards. By and large, Plaintiffs have complied with these rules in eliminating non-compensable hours from their fee request, including removing all hours for work done on any Plaintiff other than Plaintiffs Toomey, Turnerhill, and McCloud. In its response to Plaintiffs' motion for attorneys' fees, Defendant identified certain aspects of Plaintiffs' request that included non-compensable hours, including hours for work done on the claims of Plaintiff Carroll and others, hours for work done on Plaintiffs' failed claims for liquidated and treble damages, and hours mistakenly included. (ECF No. 189 at 6-7). In their reply, Plaintiffs conceded that four of the categories of hours Defendant identified were inappropriately included and agreed that $6,957.50

17

should be subtracted from their originally requested amount.  (ECF No. 190 6-7, 15).

The parties disagree about the inclusion of certain other categories of hours in the tally.  Foremost, Defendant argues that any hours related to Plaintiff Toomey's claims should be subtracted as non-compensable under Rule 68.[8]  (ECF No. 189 at 4-6).  As previously discussed, because the FLSA defines attorneys' fees separately from costs, hours spent on Plaintiff Toomey's claims are compensable.  However, this issue will be relevant later in the analysis.[9]

Defendant also argues that the hours billed for work on the appeal should be subtracted because Plaintiffs unnecessarily hired another law firm to handle the appeal, which resulted in duplicate work.  (ECF No. 189 at 8-9).  Plaintiffs argue that it was necessary to hire another law firm—Apollo Law LLC ("Apollo")—to do this work because the attorneys that handled the case at the trial level—

---

[8] Defendant separately challenges the billing of $1,462.50 for work done on claims of Plaintiff Toomey and other former-Plaintiffs.  (ECF No. 189 at 9).  Defendant notes that those hours are highlighted in yellow in a spreadsheet it attached to its response; however, there are no yellow highlights.  It seems most likely that Defendant was referring to a single billing by Michael Brown for "Legal Research: State Court Removal and Counterclaims" for that same dollar amount on December 18, 2018.  (ECF No. 189-1 at 1).  As discussed later, all billings for work done by Michael Brown will be subtracted for other reasons.

[9] Also relevant later, rather than at this stage, is Defendant's argument regarding the hours billed during testimony at trial related to Plaintiffs Toomey and Carroll.  (ECF No. 189 at 7-8).

attorneys of the Law Offices of Peter T. Nicholl ("Nicholl")—had little to no federal appellate experience.  (ECF No. 190 at 8-9). Whether or not it was reasonable to hire a separate firm to handle the appeal, many of the hours billed by Apollo were for work that needed to be done on the appeal, regardless of which firm did it. Therefore, it would be unreasonable to deny payment to Plaintiffs for those hours—especially in light of the fact that those hours were unnecessarily spent due to Defendant's decision to file an appeal that it dismissed soon thereafter.  Additionally, Plaintiffs have not included any billings for Nicholl's work on the appeal that duplicated billings for Apollo's work.

However, there are some duplicate billings by Apollo for the two attorneys assigned to the case, including several incidences of duplicate billings for correspondence and calls in which they were both involved.  Additionally, the hours spent on getting up to speed on the case are likely duplicative of work Nicholl had previously done: the 2.2 hours for "Read district court documents and evaluate appeal" and 1.4 hours for "Read and take notes on summary judgment briefing and order."  Those hours and the duplicate hours billed by Colin Reeves (who bills at a lower rate) will be subtracted, leaving 8 hours total for Apollo's work on the case.  Ultimately, 8 hours is more than reasonable under the circumstances.

19

Aside from the hours that Defendant has argued should be subtracted, the only other warranted subtraction is the 36 hours for work done by Michael Brown.  Plaintiffs have not explained his role in the case or his level of experience—they do not mention him at all in their motion—and he has not entered an appearance in this case.  Because Plaintiffs have not met their burden of proving their entitlement to payment for Mr. Brown's work, his hours will be subtracted from the total.

After subtracting all of the aforementioned non-compensable hours, including those Plaintiffs have conceded should be subtracted, 1,937.1 hours remain, allocated as follows:

| Attorney | Requested Hours | Recoverable Hours |
|---|---|---|
| Scott E. Nevin | 546.2 | 546.2 |
| Benjamin L. Davis | 219.9 | 203 |
| Kelly A. Burgy | 494 | 493.3 |
| George E. Swegman | 23.8 | 23.8 |
| Michael Brown | 36 | 0 |
| Adam Hansen (Apollo) | 4.7 | 4.7 |
| Colin Reeves (Apollo) | 9.1 | 3.3 |
| **Staff** | | |
| Benjamin Brooks | 386 | 380.1 |
| Francisca Bradley | 93.7 | 93.7 |
| Dillon Swensen | 85.6 | 85.6 |
| Chelsea Billups | 1.4 | 1.4 |

| | | |
|---|---|---|
| Kelly Burgy (Paralegal) | 24.9 | 24.9 |
| Lisa Imhoff | 4.3 | 4.3 |
| Gehrig Murphy | 9.9 | 9.9 |
| Brendan Flynn | 12.6 | 12.6 |
| Eugene Meharg | 37.2 | 37.2 |
| Andrew Harvey | 13.1 | 13.1 |
| **Total** | 2,002.4 | 1,937.1 |

Although that number is substantial, the court is satisfied that, in light of the second and third *Johnson* factors, it is not unreasonable.  This was not a run-of-the-mill FLSA case in which the only contested issue was the number of hours for which employees were paid improperly.  In this case, liability was fiercely contested, and close questions of exemptions, employee classification, and admissibility of evidence were involved. While not necessarily novel, the questions raised were not simple, and skill was required of Plaintiffs' attorneys.  Indeed, this case went to a week-long trial on the issue of liability, not just damages.

Additionally, many of Defendant's actions increased the complexity of the case, including filing an ultimately meritless and retaliatory counterclaim, requesting additional discovery, filing unsuccessful motions to reconsider and to alter judgment, and filing an appeal that it later dismissed voluntarily. Plaintiffs also note that the 5,922 emails Defendant produced in

21

discovery were not in chronological order, which increased Plaintiffs' counsel's workload. All told, 1,937.1 hours for a collective action that spanned four years, including a week-long trial, is not unreasonable. *See, e.g.*, *Hager v. Omnicare, Inc.*, No. 5:19-CV-00484, 2021 WL 5311307, at *1-2, 9 (S.D.W.Va. Nov. 15, 2021) (approving fee award for 3,246.2 hours of work in FLSA collective action that reached settlement two years and two months after complaint was filed); *Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *1, 3-4 (M.D.N.C. Jan. 8, 2020) (approving fee award for 1,758.4 hours of work in FLSA class action that reached settlement after 7 months); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F.Supp.3d 846, 848, 850 (D.S.C. 2016) (approving fee award based on 1046.9 hours of work in FLSA collective action that settled within approximately one year).

Having ascertained the reasonable hours, the next step in calculating the lodestar figure is determining reasonable hourly rates. In doing so, a court "looks to the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (internal quotation marks omitted). In this district, the prevailing market rates are reflected in Appendix B to the Local Rules, which provides guideline rates that vary based on an attorney's experience level. Although "the Guidelines are not binding, generally this Court presumes that a rate is

reasonable if it falls within these ranges." *Gonzales v. Caron*, No. 10-CV-2188-CBD, 2011 WL 3886979, at *2 (D.Md. Sept. 2, 2011). To obtain an upward departure from the guideline rates, plaintiffs bear the burden of establishing that their requested rate is reasonable. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009).

The Appendix B guideline rates are as follows: $150-225 for lawyers admitted to the bar less than five years; $165-300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-$475 for lawyers admitted for twenty years or more. The rate for paralegals and law clerks is $95-150.

In this case, all of the rates Plaintiffs have requested for work done by attorneys and paralegals at Nicholl are within the guideline ranges. However, the rates they have requested for the two Apollo attorneys are above the ranges for their respective experience levels: they have requested a rate of $450 for Adam Hansen, who is in his fourteenth year of practice, and a rate of $300 for Colin Reeves, who is in his fifth year of practice. While those attorneys' credentials and experience may justify higher rates in other cases, an upward departure from the guidelines is inappropriate in this case. They argue that higher rates are justified by "the need for creative legal thinking in this case,"

(ECF No. 183-4 at 8 n.1), but their expertise was ultimately unnecessary because Defendant voluntarily dismissed its appeal shortly after filing it.  The record does not suggest that any work Apollo did on the appeal caused the dismissal; indeed, the vast majority of hours billed are for research and internal correspondence, and Apollo did not file anything substantive in the appeal.[10]  Accordingly, their rates will be reduced to within the guidelines: Mr. Hansen's rate will be reduced to $350, and Mr. Reeve's rate will be reduced to $225.

Thus, the lodestar figure will be calculated based on the following rates:

| Attorney | Experience (Years) | Reasonable Rate |
|---|---|---|
| Scott E. Nevin | 20+ | $450 |
| Benjamin L. Davis | Approx. 17 | $350 |
| Kelly A. Burgy | Between 1-5 | $150-225[11] |
| George E. Swegman | 20+ | $450 |
| Adam Hansen (Apollo) | Approx. 14 | $350 |
| Colin Reeves (Apollo) | Approx. 5 | $225 |
| Paralegal Staff | | $150 |

---

[10] The hours submitted reflect that an attorney from Nicholl attended the mediation on September 28, 2022, and the Apollo attorneys either did not attend or did not bill for that time. (ECF No. 183-2 at 16, 183-6).

[11] Ms. Burgy began practicing law in 2018, so she billed at rates increasing each year, beginning with $150 in 2018-2019 and reaching $225 in 2022.  (ECF No. 159-1 at 21).  Those rates are all within the guidelines.

These rates are presumptively reasonable because they are all within the guideline ranges. Defendant has not challenged the rates. Additionally, the rates are consistent with the second, third, fourth, fifth, sixth, and tenth *Johnson* factors. As previously discussed, this case was not simple, and certain choices that Defendant made throughout the litigation required Plaintiffs' counsel to spend a lot of time on this case. Nicholl is a relatively small law firm, with only thirteen attorneys, so litigating this case inevitably required that firm to forego other opportunities. (ECF No. 159-1 at 24). And the firm litigated the case on a contingency-fee basis. (ECF No. 159-1 at 25). Courts in this district have recognized that "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action." *See Matias Guerra v. Teixeira*, No. 16-CV-0618-TDC, 2019 WL 3927323, at *7 (D.Md. Aug. 20, 2019); *see also Jahn v. Tiffin Holdings, Inc.*, No. 18-CV-1782-SAG, 2020 WL 4436375, at *7 (D.Md. Aug. 3, 2020).

Having decided both the reasonable hours and reasonable rates, the initial lodestar figure is $524,589.50, calculated as follows:

| Attorney | Hours | Rate | Lodestar Amount |
|---|---|---|---|
| Scott E. Nevin | 546.2 | $450 | $245,790 |
| Benjamin L. Davis | 203 | $350 | $71,050 |

| | | | |
|---|---|---|---|
| Kelly A. Burgy | 493.3 | $150-225 | $95,232 |
| George E. Swegman | 23.8 | $450 | $10,710 |
| Adam Hansen (Apollo) | 4.7 | $350 | $1,645 |
| Colin Reeves (Apollo) | 3.3 | $225 | $742.50 |
| Paralegal Staff | 662.8 | $150 | $99,420[12] |
| **Total** | | | **$524,589.50** |

This lodestar amount is high, especially considering Plaintiffs' recovery of only $16,284.50 and their lack of success in certain aspects of their case. Accordingly, a downward adjustment will be warranted, as discussed in the follow two sections of this opinion.

### B. Subtracting Fees for Unsuccessful Claims

After calculating a lodestar figure, a court "must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (internal quotation marks omitted). Here, Plaintiffs have already subtracted—or agreed to subtract, once identified by Defendant— all fees for hours spent on the claims of any Plaintiff other than the three Plaintiffs that succeeded at trial. (ECF Nos. 159-1 at 12, 190 at 6). They have also already subtracted or agreed to

---

[12] There was a mathematical error in the fee calculations in Plaintiffs' supplemental motion for attorneys' fees. (ECF No. 183 at 5). They calculated Paralegal Benjamin Brooks's fees as $58,057.50, based on 386 hours, but 386 multiplied by $150 is $57,900. This explains a discrepancy of $157.50 between Plaintiffs' and the court's calculations of the lodestar amount.

subtract all hours spent on work related to liquidated and treble damages, which Plaintiffs sought but did not recover.

Plaintiffs argue that they should, however, be compensated for work done on Plaintiff Toomey's retaliation claim, for which he recovered nominal damages of $1.00. (ECF No. 190 at 10). The general rule is that if a "prevailing party has recovered only nominal damages," "the only reasonable fee is *usually* no fee at all." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005); *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). There are exceptions in circumstances where the prevailing party has achieved non-monetary relief, if the legal issue was particularly significant, or if the case served a public purpose. *See Mercer*, 401 F.3d at 204.

Here, the court found on summary judgment that Defendant's unsubstantiated counterclaim was retaliatory, and it granted summary judgment to Plaintiff Toomey on the counterclaim and as to liability on his FLSA retaliation claim. Pursuing—and prevailing on—the retaliation claim required successfully defending against the counterclaim, and it involved examining some of the same records relevant to the FLSA claim. Plaintiff Toomey's success in defending against that counterclaim, which according to Defendant was worth "thousands of dollars," (ECF No. 95 at 22), is not reflected in his nominal damages award but provides important context to the significance of that award. Additionally, there

27

was a public purpose in Plaintiff Toomey's pursuit of and success on his retaliation claim, even if the quest for compensatory damages for that claim fell short.  Pursuing and prevailing on a retaliation claim serves the remedial purpose of the FLSA's anti-retaliation provision: to make the FLSA's "enforcement scheme effective by preventing fear of economic retaliation from inducing workers quietly to accept substandard conditions." *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 12 (2011) (internal quotation marks omitted); *see also Kane v. Lewis*, 675 F.App'x 254, 259-60 (4th Cir. 2017) ("One way for the victory to advance the public interest is deterring similar misconduct in the future.").[13]  Accordingly, the fees for hours spent on Plaintiff Toomey's retaliation claim will not be subtracted from the lodestar amount.

Defendant argues that fees billed for time Plaintiffs' attorneys spent at trial during Plaintiff Carroll's testimony, and during the testimony of a Helion employee that related to Plaintiff Carroll's claim, should be subtracted from the lodestar figure. Because Plaintiff Carroll was unsuccessful, that time should be subtracted.  Plaintiffs do not disagree, but they note that there is no record of how many hours were spent on this testimony

---

[13] Mr. Toomey was not the only Helion employee to face a claim for breach of contract.  Helion filed a similar case against Tyler Johnson in state court (ECF No. 32, at 1), which was ultimately dismissed as a part of a Rule 68 Offer of Judgment.  (ECF No. 53, at 2).

specifically.  (ECF No. 190 at 7).  Defendant estimates that six hours were spent on the testimony of Plaintiffs Toomey and Carroll and the other Helion employee—although it provides no affidavit or declaration in support of this estimate—and suggests that $4,050 in total be subtracted from the lodestar figure, based on Mr. Nevin's and Ms. Burgy's combined hourly rate of $675.  (ECF No. 189 at 8 n.5).  The court's notes reflect that Plaintiff Carroll was on the witness stand on the afternoon of March 21, 2022, for a little more than three hours and on the morning of March 22, 2022, for approximately a half hour, and the Helion employee testified for approximately two and a half hours on March 24, 2022. By the court's count, this brings the total hours spent on testimony related to Plaintiff Carroll's claims to six hours, exclusive of hours spent on Plaintiff Toomey's testimony.  Because Plaintiff Toomey was not unsuccessful, and fees for his claims will not be subtracted based on Rule 68, only the hours related to Plaintiff Carroll should be subtracted.  Therefore, $4,050 will be subtracted from the lodestar figure.

With that deduction, the updated lodestar figure is $520,539.50.

**C.   Degree-of-Success Adjustment**

The final step in this attorneys' fees analysis is reducing the lodestar figure, based on Plaintiffs' "degree of success." *See McAfee*, 738 F.3d at 88 (internal quotation marks omitted).  A

plaintiff's fee award should "properly reflect her success in th[e] case." *Id.* at 94.  And if the plaintiff's success "is limited in comparison to the scope of the litigation as a whole," the "court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

Plaintiffs' $16,284.50 recovery is only a fraction of the recovery sought by the four Plaintiffs that went to trial and an even smaller fraction when viewed "in comparison to the scope of the litigation as a whole." *Id.*  As Defendant notes, in moving for conditional certification, the Plaintiffs at the time estimated that between 25 and 75 other employees were similarly situated and that they worked between 50 and 80 hours each week (10 to 40 overtime hours).  (ECF No. 11-1 at 3, 11).  Based on Defendant's estimate that each potential member of the collective's overtime pay was about $10 more than their regular pay and that they worked an average of 52 weeks, (ECF No. 189 at 2), this would result in an estimated recovery of $130,000 at the low end and $1,560,000 at the high end, just in unpaid wages. Plaintiffs also sought liquidated damages and treble damages, which would result in a potential recovery of three times those estimates.

Plaintiffs do not dispute Defendant's estimates but instead respond that, by the time of trial, the total claims of the four

remaining Plaintiffs amounted to less than $100,000, and the unpaid wages claimed by Plaintiffs Toomey, Turnerhill, and McCloud were only $32,567.76 in total, according to witness testimony at trial. (ECF No. 190 at 1).  Therefore, according to Plaintiffs, the jury awarded them 50% of what they "could have recovered on their best day." (ECF No. 190 at 2).  That is, if one disregards the potential liquidated and treble damages that Plaintiffs sought but did not recover.  According to the joint pretrial order, the total amount Plaintiffs sought at trial was $111,663.48 in unpaid wages, liquidated damages, and treble damages, plus damages to Plaintiff Toomey for his retaliation claim.  (ECF No. 120 at 10).  The sum of the unpaid wages Plaintiffs Toomey, Turnerhill, and McCloud stated they were owed in the pretrial order was $40,018.48.  (ECF No. 120 at 9-10).  Based on those numbers, Plaintiffs' recovery was closer to 40% of what they sought, just in unpaid wages, and less than 15% of what all four Plaintiffs sought in total.  Their recovery was an even smaller portion of the amount Plaintiffs' counsel anticipated this lawsuit could be worth at the time of conditional certification.

Plaintiff Toomey's rejection of the Rule 68 offer also plays a role in this analysis.  As the Fourth Circuit put it in *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996),

> That Rule 68 may not require plaintiffs to bear their own post-offer attorney's fees [based on the underlying statute] does not, however, prohibit courts from considering a

31

> plaintiff's rejection of a settlement offer as
> one factor affecting its decision whether to
> award fees or in what amount.  In fact, such
> a consideration seems a sensible one in light
> of *Farrar*'s concerns with the degree of
> success achieved by the plaintiff and the
> public purposes served by the litigation.  *See*
> *Marek*, 473 U.S. at 11[.]  After all, refusing
> a reasonable offer of settlement promotes few
> public interests when the plaintiff ultimately
> receives a less favorable recovery after
> trial.

*See also Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 260 (5th Cir. 2018) (holding that even if a rejected Rule 68 offer does not preclude a fee award, it "should nonetheless be considered in assessing the reasonableness of an attorney's fee award" and citing other circuits that have held the same).  If Plaintiff Toomey had accepted the offer of judgment, he could have achieved all of what he recovered at trial and more.  As Defendant puts it, Plaintiffs "litigated for more than 3 years for another $5,465.50."  (ECF No. 189 at 9).  There is no indication, however, that offers of judgment were extended to the other two successful plaintiffs.

It is not uncommon for an attorneys' fee award in an FLSA case to be substantially larger than a plaintiff's recovery, especially given the purpose of the FLSA attorney fee-shifting provision to encourage attorneys to take these kinds of cases despite small potentials for recovery.  *See Castel v. Advantis Real Est. Servs. Co.*, No. 2:07CV435, 2008 WL 3348774, at *5 (E.D.Va. Aug. 8, 2008).  And the court is mindful of the fact that Plaintiffs' lodestar figure is so high in large part because of

Defendant's choices that prolonged the litigation with little benefit to either party or the public.  However, Plaintiffs were entirely unsuccessful in proving that Defendant had willfully violated overtime laws or acted in bad faith or that Plaintiff Toomey was damaged economically by Defendant's retaliation, and their ultimate recovery after years of litigation and a week-long trial was relatively insignificant, especially in light of the amount they sought to recover and the scope of the litigation as a whole.

Accordingly, Plaintiffs' lodestar figure will be reduced by 60% as it relates to the Nicholl work.  The reduction will not be applied to the fees for appellate counsel, whose work was necessitated solely by Defendant.  The award for fees is $209,648.30, including $2,387.5 for work by Apollo.  This is still a substantial fee award, but it is more in line with other FLSA cases with comparable recoveries.  *See, e.g.*, *Copeland v. Marshall*, 641 F.2d 880, 906-07 (D.C. Cir. 1980) (en banc) (affirming $160,000 attorneys' fees award for obtaining a $33,000 judgment plus equitable relief); *Butler v. Directsat USA, LLC*, No. 10-CV-2747-DKC, 2016 WL 1077158, at *1 (D.Md. March 18, 2016) (awarding $258,390.67 in fees where plaintiffs recovered $36,000 total); *Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 644 (D.Md. 2012) (awarding $110,115.94 in fees where eight plaintiffs recovered $13,940 in back pay); *Morris v. Eversley*, 343 F.Supp.2d 234, 248

33

(S.D.N.Y. 2004) (awarding $154,900 in fees where plaintiff was awarded $16,000); *see also Gurule*, 912 F.3d at 261 (approving 60% downward adjustment where plaintiff rejected more favorable Rule 68 offer and otherwise achieved limited success at trial).

### D.   Costs

Finally, the court must determine the costs to which Plaintiffs are entitled. Plaintiffs request $8,427 in costs. (ECF No. 190 at 15). However, that includes costs incurred through the pursuit of Plaintiff Toomey's claim after he rejected the Rule 68 offer of judgment. Rule 68 requires plaintiffs who reject offers of judgment and ultimately obtain less favorable judgments to pay their own post-offer costs. *See Sheppard*, 88 F.3d at 1334.

Defendant argues that Plaintiffs' requested costs should be reduced by $540.55, including $472.75 incurred for a transcript of Plaintiff Toomey's deposition and $67.80 in travel costs to visit Plaintiff Toomey. (ECF No. 189 at 11). Plaintiffs do not dispute that those costs were incurred in relation to Plaintiff Toomey's claim and only argue that they are entitled to those costs because the Rule 68 offer was invalid. As previously discussed, the Rule 68 offer was valid; therefore, those costs will be subtracted from the amount Plaintiffs requested.

The other items included in the costs request are court filing fees, service of process fees, conditional certification notice mailing costs, and deposition and transcript costs for other

witnesses.    These  are  substantiated  by  receipts  and  invoices
attached  to  Plaintiffs'  motion  and  are  reasonable  under  the
circumstances  of  this  case.    (ECF  No.  159-8).    Accordingly,
Plaintiffs  will  be  awarded  $7,886.45  in  costs.

## IV.  Conclusion

Defendant's  motion  for  attorneys'  fees  and  costs  will  be
granted  in  part  and  denied  in  part,  and  Plaintiffs'  motion  for
attorneys'  fees  and  costs  will  be  granted  in  part  and  denied  in
part.    The  court  will  award  $612.25  in  costs  to  Defendant  (paid  by
Plaintiff  Toomey)  and  $217,534.75  in  attorneys'  fees  and  costs  to
Plaintiffs,  including  $209,648.30  in  attorneys'  fees  and  $7,886.45
in  costs.    A  separate  order  will  follow.


                                    /s/
                          _____
                          DEBORAH K. CHASANOW
                          United States District Judge

35